JAMES L. HIGHT *et al.*

*v.*

JOHN W. WALKER, EX'R.

*Opinion filed April 17, 1899.*

179     209
f189   ²132

1. ACTIONS AND DEFENSES—*when executor may sue on agreement to pay rent.*  An action may be maintained by an executor against his personal creditor to recover money derived from the sale of grain which the executor had been holding in store for a tenant of the estate as security for rent, and which the executor sold, by the direction of such creditor, upon the latter's agreement to credit the proceeds upon the executor's personal account and pay the rent when the tenant had named his price for the grain.

2. APPEALS AND ERRORS—*Supreme Court cannot review facts in suits at law.*  A judgment by the Appellate Court affirming the finding by a jury, on conflicting evidence, that defendant had entered into a contract with the plaintiff, is binding upon the Supreme Court, although the contract appears to be unreasonable and of no benefit to the defendant.

*Hight* v. *Walker*, 78 Ill. App. 451, affirmed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macon county; the Hon. EDWARD P. VAIL, Judge, presiding.

JOHNS & HOUSUM, for plaintiffs in error.

MILLS BROS., for defendant in error.

179—14

Mr. Justice Craig delivered the opinion of the court:

This was an action of assumpsit, brought by John W. Walker, executor of the estate of David Oxer, deceased, against James L. and Edward L. Hight, to recover the sum of $1250, the proceeds of a quantity of corn which it was alleged had been received by the defendants belonging to the estate of Oxer, and which had not been accounted for by the defendants. On a trial in the circuit court plaintiff obtained a verdict and judgment for the amount claimed, and on appeal the judgment was affirmed in the Appellate Court.

It appears from the evidence that John W. Walker was executor of the estate of David Oxer, deceased, and as such had leased a farm belonging to the estate to one Craven, for the season of 1895, for the sum of $1250, to be paid January 1, 1896. The corn in controversy was raised on this farm during the season of 1895. Walker was engaged in the business of buying and shipping grain at Walker's Station, on the Illinois Central railroad, and owned an elevator and cribs at that point, in which he stored corn belonging to himself and corn belonging to others deposited for storage. He charged and received compensation for the corn in storage, but mingled his corn and that of his customers together. The depositors of corn had the privilege of coming in at any day, within a time limited by contract, and receiving from Walker the market price of corn on that day, and thereupon, payment being made, the corn became the property of Walker. In the fall of 1895, Craven, the tenant, in order to pay the rent, arranged with Walker to store in the elevator and cribs enough corn raised on the demised premises to pay the rent, with the understanding that when the corn was sold the proceeds should be applied on the rent. Under this arrangement 5205 bushels of corn were stored with Walker in the elevator and cribs in the fall of 1895 and early spring of 1896, to secure the rent of $1250, by Craven and his tenant, Landrim. Craven was

to have, if he desired, until July 1, 1896, to sell the corn. This corn was mixed with other corn when received, the greater portion of it being placed in the elevator and soon shipped out. A part of the corn, however, was placed in the cribs, and a sufficient quantity was reserved in the cribs to meet the amount of rent corn which had been stored and also corn stored by others.

The defendants were bankers at Macon, near Walker's Station, and Walker kept a bank account with them, and transacted with them all of his banking business in carrying on his grain business. In the spring of 1896 Walker's account at the bank was largely overdrawn, and J. L. Hight, one of defendants, urged him to make his balance good, and asked him if he could not sell corn to raise money and pay what he owed them. Thus far there is no substantial disagreement in regard to the facts. They are stated in substance as found in the opinion of the Appellate Court and conform to the evidence found in the record. But in regard to the conversation between Walker and J. L. Hight, referred to above, there is a radical dispute between the parties. On this branch of the case Walker testified: "I had a talk in the spring of 1896 with the defendants,—along about the first of March,—at the bank. J. L. Hight wanted to know if I did not have some corn I could ship out. I told him I did not have much of my own that was paid for, but there was considerable corn that was on deposit. He said money matters were pretty tight and I would have to do something; could I not ship out the corn? I told him I could ship it out, but the corn was not priced, and as it came due or as they sold it I could ship it out if he would pay for it. I waited for an answer a few minutes, and said, 'What shall I do about it?' He said, 'You had better go ahead and ship out the corn.' I went home, ordered cars and went to shipping out the corn. I told him that the Oxer corn was part of the corn and would have to be paid for by the first of July. I told him several times

about the rent, and that the corn was the rent of the place, and they said better go ahead and ship it out. They did not say, yes, they would pay for it, but 'Go ahead and ship it out.'"

In reference to this conversation J. L. Hight testified: "I remember the occasion and the conversation. It was the last of March or the first of April. There were present, my son Edward, Mr. Walker and myself. Mr. Walker came into the bank and I spoke to him about his account. It was increasing somewhat and I wanted him to cut it down in some way. I asked him if he had anything he could ship out,—if he had corn in the elevator to ship,—what amount he had. He said he did not have much in the elevator. He said then that he had this Oxer corn. He did not state how much. I don't remember that he stated the amount. He said he could ship it out if we would pay for it when the parties sold the corn to him. I told him I would not,—positively would not,— pay for the corn that went out before it was paid for, and that I would not pay for corn after it was gone." The testimony of this witness was fully confirmed by the evidence of Edward L. Hight, the other defendant. Soon after this conversation Walker shipped the corn held in store by Craven, and drafts drawn on the shipments of the corn by Walker were deposited with the defendants but placed to the credit of Walker's private account.

While it appears to be unreasonable that business men of ordinary capacity would enter into the arrangement that Walker testifies the defendants did enter into in regard to the corn Craven had in store with Walker, as they could derive no benefit whatever from the arrangement if they had to account for the proceeds to the estate of Oxer, yet that was a question of fact which was conclusively settled against the defendants by the judgment of the Appellate Court affirming the judgment of the circuit court, and it cannot be reviewed here. It is apparent from the evidence that Walker held the corn

in store as security for the rent for 1895 due the estate of Oxer, and if, while so holding the corn, the defendants directed a shipment and sale, agreeing to pay the rent out of the proceeds of the corn when the price should be named by Craven, we perceive no reason why an action may not be maintained in the name of Walker, as executor of the estate, for the money which was derived from the sale of the corn.

The following instruction given for the plaintiff is claimed to be erroneous:

"If you find the issues for the plaintiff, then the amount he is entitled to recover would be the amount of rent shown by the evidence to have been due, provided the value of the Craven corn at the date it was sold was not as much as the rent, etc., then and in that event of the proof the recovery must be limited by the value of the corn at the time of the sale, as required by these instructions."

The action was brought to recover money, and the jury should have been so informed in the instruction. But while the instruction is subject to criticism, as the recovery is limited to the amount the corn was worth in the market at the time sold, the jury could not have been misled by it.

It is also claimed that the court erred in refusing certain instructions asked by the defendants. The court, at the request of defendants, gave to the jury five instructions which fully covered all questions of law involved in the case, and if it were conceded that the refused instructions were not erroneous there would have been no necessity for giving them to the jury. Indeed, the questions involved in this case were in the main questions of fact, and in the determination of those questions instructions would afford but little aid to the jury.

We find no substantial error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*